THE LAW OFFICES OF<br>
ANDREW J. FRISCH, PLLC

ONE PENN PLAZA
53rd FLOOR
NEW YORK, NEW YORK 10119
(212) 285-8000
FAX: (646) 304-0352

July 29, 2019

JASON D. WRIGHT
ADMITTED IN NEW YORK, VIRGINIA
AND THE DISTRICT OF COLUMBIA
OF COUNSEL

*By ECF*
The Honorable Arthur D. Spatt
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   Re: *Brian Callahan v. United States;*
     Docket Number 13-453 (ADS)

Dear Judge Spatt:

  The government's letter (Dkt 212) in opposition to Mr. Callahan's application for bond (Dkt 211) is the equivalent of opposing an injunction without addressing the merits: the government's letter rehashes Mr. Callahan's sentencing, but fails even to attempt to address Mr. Callahan's pending arguments [Dkts 196 and 205-07], which demonstrate that he has already served his correct Guideline sentence because:

  • The government breached its plea agreement with Mr. Callahan, invalidating the agreement's waiver of post-conviction remedies [*see United States v. Wilson*, 920 F.3d 155, 168 (2d Cir. 2019); *United States v. Palladino*, 347 F.3d 29, 33 (2d Cir. 2003); *United States v. Chua*, 349 F. Supp. 3d 214, 218 (E.D.N.Y. 2018 (Weinstein, U.S.D.J.); *In re Alto*, 180 F.3d 372, 375 (2d Cir. 1999) (requiring district judges to hold the government to the "most meticulous standards of both promise and performance" of plea agreements);

  • The government's breach of Mr. Callahan's plea agreement is established by facts *de hors* the appellate record, rendering the Circuit's dismissal of Mr. Callahan's direct appeal inapplicable to his pending collateral challenge (the government in its letter [Dkt 212 at 8] falsely claims that the Circuit "affirmed" Mr. Callahan's conviction);

  • The government misled this Court at sentencing, claiming to have taken a "conservative approach" and analogizing Mr. Callahan's crime to a Madoff-style *Ponzi* scheme, when in fact credits offset the fraud, repeatedly valued by the government at $96 million in the government's correspondence to the Court, the

plea agreement it drafted, and in its initial disclosure to the Probation Department for Mr. Callahan's presentence report;

- Mr. Callahan reasonably relied on (1) the plea agreement's valuation of the fraud at $96 million; (2) the government's express exclusion of conduct acknowledged by the government in its indictment to be non-criminal; and (3) the parties' expectation that the $96 million value of the fraud would be offset by applicable credits, not arbitrarily increased in violation of the plea agreement to neutralize applicable credits and artificially inflate the Guideline range; and

- Mr. Callahan's counsel at sentencing should have challenged the government's eleventh-hour change in the plea agreement from $96 million to $140.6 million rather than proceed immediately to sentencing without requesting sufficient time to grasp the ramifications of the change or even invoking the statutorily-mandated adjournment upon the Probation Department's issuance of an addendum to the presentence report on the eve of sentencing. *See* 18 U.S.C. §3552(d).

Without *any* accompanying explanation, the government in its opposition to bond cites language of Mr. Callahan's plea agreement that the $96 million was a mere "estimate" [Dkt 212 at 2], but the Circuit just this year squarely confirmed that the government may not change a term of a plea agreement at sentencing absent new facts. *See United States v. Wilson*, 920 F.3d at 165 ("It was thus logical for [the defendant] to believe that the [*Pimentel*] estimate, and the Government's stance at the sentencing hearing, would not be altered in the absence of new information") (*quoting Palladino*, 347 F.3d at 34). The government in its letter does not claim that it changed the estimated value of the fraud because it learned of new facts after issuing its plea agreement, nor could it legitimately so claim *as there were no new facts*. Rather, the government increased the value of the fraud from $96 million to $140.6 million, *a staggering $44.6 million representing a 46% increase*, to fabricate a false Guideline range to neutralize the substantial applicable credits.

More, if it is truly the government's position that its express valuation of the fraud at $96 million (including in its correspondence to the Court, the plea agreement it drafted, its press statements to the public, and its initial disclosure to the Probation Department for Mr. Callahan's presentence report) was merely "an estimate," the government thereby violated *Brady v. Maryland*, 373 U.S. 83 (1964): the government's spreadsheet, detailing the financial data underlying the calculation of fraud loss, proves that the government's increase of loss from $96 million to $140.6 million was in irreconcilable conflict with the government's own indictment [*see* Dkt 206-2 (Declaration of Mazars USA)], but was not disclosed to Mr. Callahan until February 2019, eighteen months *after* sentencing and only after current defense counsel sought review of this case by the United States Attorney's executive office. Any argument that $96 million was a mere estimate (which purportedly missed the mark by $44.6 million!) fails the straight-face test and establishes *yet another substantial and inexcusable constitutional violation and another substantial and extraordinary basis on which to grant bond*.

2

Also cause for alarm is the government's refusal in its letter to explain *or even acknowledge* its default of the Court's order that the government respond to the pending petition and motions on or before July 19, 2019. The government waited to apply for more time until July 22, 2019, *after* defense counsel's inquiry about the government's apparent default, and even then made no effort to explain to the Court or even acknowledge its default. Judges often rely on and defer to the government as a matter of practical necessity, but that deference should never morph into indulgence of a government that fails to play by the rules and ignores constitutional and procedural norms, even more so when the issue is bond.

The government in its letter quotes the Court's words at Mr. Callahan's sentencing, but the Court was unaware at sentencing of the government's breach of its plea agreement: defense counsel at sentencing did not raise the issue, nor did he request the time necessary to understand the ramifications of the government's eleventh-hour change of the case, nor did he or the Court have the benefit of the government's candor and exculpatory spreadsheet, which should have been disclosed as *Brady* material. By citing and relying on the Court's words at sentencing, without addressing the government's breach of the plea agreement to which the Court was not alerted, the government itself shows why the requested remedies of disqualification of the United States Attorney's Office, as well as the Court's recusal [*see United States v. Wilson*, 920 F.3d at 168], are warranted, and why this application for bond raises substantial and extraordinary issues.

The government's apparent suggestion (Dkt 212 at 8) that bond is never available to remedy illegal custody is flat wrong, as established by *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), and *Illarramendi v. United States*, 906 F.3d 268, 271 (2d Cir. 2018). The cases cited by the government are not the contrary. *See, e.g., Harris v. United States*, No. 97-CV-1904, 1997 WL 272398 at *1 (S.D.N.Y. May 21, 1997) ("One can conceptualize a habeas petition where fundamental trial defects are so readily apparent that the Court can at an early stage determine that there is a "demonstrated likelihood" or "high probability" of success, thereby justifying bail"); *Iuteri v. Nardoza*, 662 F.2d 159 (2d Cir. 1981) (disagreeing with district court's finding of likelihood of success). Here, of course, the only information available to the Court about the specifics of Mr. Callahan's collateral challenge and its likelihood of success is Mr. Callahan's submissions because the government has elected not even to acknowledge Mr. Callahan's arguments let alone address them. The most compelling basis for bond on a *habeas* petition, if not the *sina qua non* for bond, is a substantial showing of wrongful custody of the type amply made here.

We urge the Court to see the government's non-responsive response to Mr. Callahan's application for bond for what it is: a doctrinaire refusal to appreciate that fairness and due process are integral and indispensable to the government's institutional mission. The government's letter amounts to a concession that it has no good answer to the substantial and extraordinary claims raised by Mr. Callahan.

       After Mr. Callahan's sentencing, he surrendered to serve his sentence, and he will surrender again to continue serving his sentence if and when the government proffers an explanation for its conduct of this case, and should the Court sustain any such explanation if and when it is made. The same sureties are ready, willing and able to post properties, and other security is available. Meanwhile, Mr. Callahan's substantial and extraordinary argument that he has served his correct Guideline sentence and is entitled at least to be re-sentenced stands essentially *unanswered*, and he should be permitted to post bond so he can be released to ensure the adequacy and efficacy of his requested relief. Otherwise, the prejudice to Mr. Callahan is irreparable.

       This case is not just another run-of-the-mill petition for *habeas* relief; it is substantial and extraordinary in every way, and Mr. Callahan's application for bond should be granted.

       Respectfully submitted,

/s/
Andrew J. Frisch

cc: AUSA Christopher Caffarone

4