**FILED**
**CLERK**

7/31/2019 1:42 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
UNITED STATES OF AMERICA,

       -against-

BRIAN R. CALLAHAN,

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:13-cr-00453 (S-1)(ADS)

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the United States*
610 Federal Plaza
Central Islip, NY 11722
      By:    Christopher Charles Caffarone, Assistant United States Attorney,

271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Brian D. Morris, Assistant United States Attorney,
               Karin K. Orenstein, Assistant United States Attorney,
               Shannon Cassandra Jones, Assistant United States Attorney, Of Counsel.

**Andrew James Frisch, Esq.,**
*Attorney for the Defendant*
One Penn Plaza Suite 5315
New York, NY 10119

**SPATT, District Judge**:

Defendant Brian R. Callahan ("Callahan") pleaded guilty, pursuant to a plea agreement, to

securities fraud and wire fraud. He thereafter filed a motion pursuant to 28 U.S.C. § 2255, which

is pending awaiting the Government's opposition.

Presently before the Court are motions by Callahan for recusal of the undersigned and for

his release on bond pending the adjudication of his habeas petition. For the following reasons, the

Court denies the motions.

1

# I.  BACKGROUND

**A. FACTUAL BACKGROUND.**

Between 2005 and 2012, Callahan operated a large-scale Ponzi scheme. He took money from investors purportedly to invest in hedge funds, stocks, bonds and other investment vehicles. However, unknown to investors, Callahan used those funds to pay redemptions to prior investors; to pay himself $6 million; and to purchase and renovate the Panoramic View, a cooperative development in Montauk, New York in which he, personally, had a 50% ownership interest.

A grand jury sitting in the Eastern District of New York returned a 19-count indictment charging Callahan with securities fraud; wire fraud; conspiracy to commit securities fraud; conspiracy to commit wire fraud; and aggravated identity theft. Callahan pleaded guilty to securities fraud and wire fraud violations and received a 144-month sentence of incarceration based in part on the Court's calculation that he caused $19.7 million in loss.

Callahan's petition alleges that the Government violated his plea agreement by falsely representing to the Court the amount of loss caused by his behavior at the sentencing hearing. Specifically, he alleges that the Government initially agreed that he caused $96 million in fraud losses, but two days before the sentencing hearing changed its calculations to $140.6 million. In Callahan's view, the Government increased the estimate to avoid the fact that he was entitled to substantial credits against the loss, which exceeded its initial estimate of fraud loss and would have resulted in a significantly diminished range of 15-to-21 months under the Sentencing Guidelines. Therefore, Callahan alleges that his sentence was unconstitutional in light of the Government's knowing misrepresentations.

**B. PROCEDURAL BACKGROUND.**

On April 29, 2014, Callahan pleaded guilty, pursuant to a plea agreement, to securities fraud and wire fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 18 U.S.C. § 1343, respectively.

On September 15, 2017, the Court sentenced Callahan to 144 months' incarceration and ordered Callahan to begin serving his sentence on November 27, 2017.

On November 19, 2017, Callahan moved to postpone his sentence, which the Court denied the next day.

On November 20, 2017, Callahan moved for bail pending appeal, pursuant to 18 U.S.C. § 3143(b)(1), which the Court denied on November 22, 2017.

Callahan filed a notice of appeal arguing that the government changed its theory of loss, as well as the Court's rejection of his motion for bail pending appeal.

On December 28, 2017, the Second Circuit dismissed Callahan's appeal on the ground that the he waived his right to appeal if he received a sentence of imprisonment of 327 months or below and found that the motion for bail was moot.

In January 2018, Callahan began serving his sentence.

On September 28, 2018, Callahan filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255.

On June 19, 2019, Callahan filed a motion seeking: (1) an order disqualifying the United States Attorney's Office from prosecuting this case; (2) recusal of the undersigned; (3) an order requiring enforcement of a plea agreement between the Government and co-defendant Adam J. Manson; (4) permission to supplement Callahan's September 28, 2018 motion to vacate; and (5) Callahan's immediate release on bond.

3

On July 22, 2019, the Government filed a motion seeking to extend the July 19, 2019 deadline for responding to Callahan's motions to August 19, 2019, which the Court granted.

On July 23, 2019, Callahan filed a motion seeking an immediate hearing regarding his bond application.

## II. DISCUSSION

### A. AS TO THE MOTION FOR RECUSAL.

Callahan urges the undersigned to exercise the Court's discretion to recuse itself from these proceedings in the interests of justice. Although Callahan does not question the undersigned's objectivity and acknowledges its ability to "dispassionately resolve[]" his request "on the merits," ECF 196-1 at 5, he believes that its imposition of an unconstitutional sentence acts as an unnecessary taint that would affect the resolution of his habeas petition. As the only basis for making such an extraordinary request, Callahan cites *United States v. Wilson*, 920 F.3d 155 (2d Cir. 2019), in which the Second Circuit explained:

> In cases where specific performance is the appropriate remedy, we typically remand the case for resentencing before a different district judge because the effect of the government's breach of its commitment is difficult to erase and it is likely that the same judge would reach the same result as he reached before.

*Id.* at 168.

Under normal circumstances, the Court would have preferred to wait until after it received the Government's opposition to determine whether to reassign the case to another judge. However, in light of the Callahan's accompanying demand for the immediate resolution of his bond application, the Court must decide the issue now. The Court's capacity to render decisions objectively in a case is a prior question that implicates its assessment of all motions pending before it. The Court could not reasonably decide Callahan's bond application without first ensuring that it could do so pursuant to a neutral evaluation of the merits.

In the Court's view, the circumstances do not warrant recusal. As Callahan admits, *Wilson* involved a different procedural posture, in which the Second Circuit found on appeal that the Government breached a plea agreement. *Id.* at 168. Pursuant to that finding, the Second Circuit had to decide when fashioning the remedy whether "to permit the plea to be withdrawn or to order specific performance of the agreement." *Id.* The court chose specific performance and remanded it to the district court for resentencing. *Id.* Thus, *Wilson* provides for the recusal of the judge who imposed the original sentence where the court (1) finds a violation of the plea agreement occurred; and (2) determines that specific performance is the appropriate remedy.

Here, the Court faces a totally different set of facts. This is a collateral proceeding challenging a sentence upheld by the Second Circuit, not an appeal of Callahan's original sentence. The Court has neither ruled that the Government violated the plea agreement nor ordered specific performance and resentencing. Put another way, Callahan's motion puts the proverbial cart before the horse. He seeks the remedy without first establishing the harm. Permitting recusal simply based on an *allegation* that the Government violated a plea agreement would not advance the goals articulated by *Wilson*. Also, it would create a new procedural mechanism whereby habeas petitioners could obtain a new judge simply by accusing the Government of bad faith.

If the Court in fact finds that a breach of the plea agreement occurred, it will entertain arguments for its recusal. Until then, it will continue to preside over these proceedings. Accordingly, the Court denies Callahan's motion for recusal.

## B. AS TO THE MOTION FOR A BOND.

The Court has the "inherent power to release on bail a habeas petitioner who challenges his detention after a criminal conviction," but "[t]he standard ... is a difficult one to meet": "The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that

extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 223, 226 (2d Cir.2001). Notably, the "the standard for release on bail under 28 U.S.C. § 2255 is even higher than . . . for release pending direct appeal." *United States v. Whitman*, 153 F. Supp. 3d 658, 661 (S.D.N.Y. 2015). For a petitioner to qualify for such relief, "'there must be a demonstrated likelihood that the petition will prevail, based upon claims of a substantial nature upon which the petitioner has a high probability of success, and demonstrating merits that are more than slightly in petitioner's favor, so that victory for petitioner can be predicted with confidence.'" *Muja v. United States*, No. 10-cv-2770, 2011 WL 1870290, at *1 (E.D.N.Y. May 16, 2011) (quoting *Beras v. United States*, No. 05-cv-2678, 2007 WL 195352 (S.D.N.Y. Jan. 24, 2007)).

In the Court's view, releasing Callahan on bail pending its resolution of his habeas application would be inappropriate.

First, the Court finds that his habeas petition does not raise "substantial questions" upon which he has a "high probability of success." The Court reviewed Callahan's habeas petition and does not agree that he presented a sufficiently compelling merits case that his victory can be predicted with confidence. Of course, the Court has not in fact decided the merits of the habeas petition and its determination at this stage will have no bearing on its ultimate assessment of the motion. *See Beras v. United States*, No. 05-cv-2678, 2012 WL 2148986, at *1 (S.D.N.Y. June 12, 2012) ("Although the Court does not yet decide the merits of the habeas petition, the Court finds that the Petitioner has failed to demonstrate a likelihood that the petition will prevail.").

Second, the Court finds the absence of extraordinary circumstances that would justify his release. Although he has alleged serious misconduct by the Government, Callahan's argument for bail is really a claim that vacating his sentence would end his incarceration because he already

served the sentence he should have received. However, a petitioner's continued confinement during habeas review is normally not considered an extraordinary circumstance entitling him to bail. *See Iuteri v. Nardoza*, 662 F.2d 159, 162 (2d Cir. 1981) ("Iuteri contends further that his case is extraordinary because, if the habeas writ is granted, it will mean that his incarceration after July 2, 1981, would have been without basis. However, there is nothing unusual about this. Virtually all habeas corpus petitioners argue that their confinement is unlawful.'); *Harris v. United States*, No. 97-cv-1904, 1997 WL 272398, at *1 (S.D.N.Y. May 21, 1997) ("The fact that [petitioner's] post-petition incarceration will have been without just basis if his petition eventually succeeds does not constitute an extraordinary circumstance entitling him to bail."); *Livingston v. Miller*, No. 18-cv-0803, 2019 WL 2281111, at *3 (N.D.N.Y. May 29, 2019) ("The fact that petitioner is incarcerated in alleged violation of his constitutional rights does not constitute an extraordinary circumstance."); *Welch v. Artus*, No. 04-cv-205, 2007 WL 949652, at *60 (W.D.N.Y. Mar. 29, 2007) ("If the Court is mistaken on this point, and Welch's habeas petition should eventually succeed, the fact that his post-petition incarceration will have been without a justified basis does not constitute an extraordinary, circumstance entitling him to bail.").

Callahan contests this conclusion, but neither case he cites supports his argument as both cases denied the petitioner's application for bail. *See Mapp v. Reno, 241 F.3d 221*, 230 (2d Cir. 2001); *Illarramendi v. United States*, 906 F.3d 268, 271 (2d Cir. 2018). The Court will not release him pending review of his habeas petition based solely on his subjective belief regarding the merits of his petition. As courts in this district have recognized:

> [T]here is abundant authority that federal district judges in .. section 2255 proceedings have inherent power to admit applicants to bail pending the disposition of their cases, but a power to be exercised very sparingly. The reasons for parsimonious exercise of the power should be obvious. A defendant whose conviction has been affirmed on appeal ... is unlikely to have been convicted unjustly; hence the case for bail pending resolution of his postconviction

proceeding is even weaker than the case for bail pending appeal. And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted.

*Knutson v. United States*, No. 00-cv-4830, 2001 WL 477269, at \*1 (E.D.N.Y. Mar. 7, 2001) (quoting *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir.1985)).

Therefore, the Court denies Callahan's application for release on bond pending the adjudication of his habeas petition.

### III.  CONCLUSION

For the foregoing reasons, the Court denies Callahan's motions for recusal and for bail pending habeas review.

It is **SO ORDERED**:

Dated:  Central Islip, New York

July 31, 2019

___/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge