UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                -against-

BRIAN CALLAHAN,

                            Defendant.

**MEMORANDUM AND ORDER RE: RENEWED APPLICATION FOR RELEASE**
13-CR-453 (GRB)

-------------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

In September 2020, this Court issued a decision rejecting an application by defendant Brian Callahan for compassionate release or sentence reduction under the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018) ("First Step Act"), predicated primarily upon certain medical factors, including the risk of contracting COVID-19 while in custody. Docket Entry ("DE") 244; *United States v. Callahan*, 488 F. Supp. 3d 10, 16 (E.D.N.Y. 2020), *vacated and remanded sub nom. United States v. Manson*, No. 20-3401, 2021 WL 1330979 (2d Cir. Apr. 6, 2021). Familiarity with that decision, incorporated herein by reference, is assumed.

Shortly thereafter, the Court of Appeals issued a decision in *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). In *Brooker*, the Second Circuit decided, as a matter of first impression, whether the definition of "extraordinary and compelling" reasons justifying compassionate release or sentencing reduction are constrained by Application Note 1(D) of U.S.S.G. § 1B1.13. The answer is no. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237.

Callahan then filed an appeal. DE 245. The Government moved to vacate and remand this matter. Over defendant's objection, the Circuit remanded this case, instructing that "the district court should apply our decision in *Brooker* and determine whether it will exercise its discretion to grant a sentence reduction under this new standard." *United States v. Manson*, 2021 WL 1330979, at *1 (2d Cir. Apr. 6, 2021).

Through counsel, Callahan filed a supplemental motion pursuant to 18 U.S.C. § 3582(c)(1)(A). DE 252, 252-1 (supplemental declaration[1]). The declaration largely catalogs subjective complaints about the quality of medical care during the defendant's incarceration. *Id.* One passage, though, proves noteworthy:

> "I make this motion fully aware of the harm I caused investors whom I deliberately misled. I have committed myself to living a life that makes amends by my example to my children and everyone else in everything I do. I know that I have put myself in the position where anything I say may not seem credible, and that's on me."

DE 252-1, ¶ 9. The Government filed a response. DE 259. To the extent that the response relies upon the standards set forth in § 1B1.13, *Brooker* has freed this Court from such limitations, and the Court has disregarded these arguments. *See* DE 259 at 2 ("Adopting § 1B1.13 as the definition for 'extraordinary and compelling reasons' would give due respect to Congress' express delegation of definitional power to the Commission."). For avoidance of doubt, in reaching its determination, the Court does not adopt the now-outdated Guidelines standards and has instead exercised its discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237.

In its prior decision, this Court explained that, even if Callahan had satisfied the demanding standards under § 1B1.13, the considerations of 18 U.S.C. § 3553(a) warranted a denial of the motion:

> where a defendant meets the threshold for compassionate release, which defendant here plainly has not, the Court must then consider whether such release would run afoul of the Section 3553(a) sentencing factors. Judge Spatt's careful analysis and reconsideration of these factors strongly weigh against release in these circumstances. *See Rosario*, 2020 WL 3100461, at *1 ("Assuming the confluence of Mr. Rosario's medical conditions and the BOP's handling of the pandemic presents 'extraordinary and compelling reasons' to reduce his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), the Court nonetheless finds that the factors set forth in 18 U.S.C. § 3553(a) outweigh those reasons and mitigate against a reduction in his original sentence"). Considering the severity of defendant's offenses, documented in

---

[1] Though unsigned due to logistical difficulties, the Court has considered this declaration, as well as the further declaration found at DE 260-1, as though fully and properly executed.

extensive court findings and multiple decisions, a reduction of sentence – or in this case – an immediate release is simply unwarranted on this record.

*Callahan*, 488 F. Supp. 3d at 16. Even considering the broader discretion afforded this Court by *Brooker*, this determination stands: the application filed does not warrant relief.

One additional aspect of the earlier decision – a summary of prior litigation concerning the defendant's sentence – perhaps requires clarification. *See id.* at 12. Defendant and his counsel have either misapprehended the import of this section, or have attempted to misconstrue it, suggesting that the Court has drawn some inference as a result of Callahan's exercise of his rights. For example, on this application, his counsel states:

> Mr. Callahan's previous challenges to his sentence should not be held against him on this motion. No inference about Mr. Callahan's acceptance of responsibility can fairly be drawn from this Court's earlier observation that "this motion is not Mr. Callahan's first attempt to challenge the sentence imposed." . . .
>
> . . .
>
> Mr. Callahan and I understand that our previous applications have been denied. We believe that we do the record of this case no injustice by recognizing features of his sentence.

DE 252 at 6-7. Or, as the defendant stated in his declaration, "I meant no disrespect to Judge Spatt or anyone else in challenging some features of my sentencing." DE 252-1 at 2. To be clear, no offense was taken and no inferences were drawn. The passage identified, which was preceded by the phrase "To put this in context," served to document that – as counsel acknowledges – some of the arguments raised by Callahan had been previously raised and rejected by the Court.

To the extent defendant wishes to, once again, relitigate questions of the propriety of sentencing and the U.S.S.G. calculations employed by Judge Spatt, *see, e.g.*, DE 252 at 6, those efforts are rejected for the reasons set forth in the earlier decision. To the extent that counsel urges this Court to consider "the circumstances that underlie his initial sentence," DE 252 at 5, the record in this case overwhelmingly justifies the sentence imposed. In terms of the history and characteristics of the defendant, the record reveals that, well before the offense of conviction, Callahan was barred from the securities industry for life by FINRA in 2009. Nevertheless, he managed to implement and effect a scheme with significant victim

impact.  One victim noted that she "invested $500,000 . . . My money went straight into an offshore bank account and was never invested in anything that I designated. . . .  I NEEDED that money to help me for the rest of my life."  DE 158-1.  Another couple stated that, as a result of the defendant's conduct, "we have lost our life savings (approximately $900K)."  DE 158-8.  Other victim comments are similarly insightful:

> "Most of all, I am heart broken."  DE 158-4.

> "This crime has hurt our family in many way[s,] not just financially . . . ."  DE 158-7.

> "Callahan stole over $11.8 million from four trusts created by our family . . . . [T]hey represented capital accumulated through generations of work . . . by our family."  DE 158-12.

Taken together, these comments, and the record as a whole, serve to validate Judge Spatt's determinations herein.  As noted in the prior decision:

> Characterizing the offense at issue as "a major fraud, one of the worst," Tr. 63, Judge Spatt carefully crafted a sentence intended to reflect the "very serious" nature of the offense, noting that the defendant's conduct, specifically "cheating and stealing and lying," required a consequence that would promote respect for the law, as well as contemplate specific and general deterrence and therefore protect the public. Tr. 64.

*Callahan*, 488 F. Supp. 3d at 11 (E.D.N.Y. 2020).  And, once again, Judge Spatt's sentence of 144 months not only was below the advisory Guidelines range of 151-188 months, but was a fraction of the appellate waiver of 327 months.  *Id.* at 12.  Releasing Callahan at this stage – when he has served less than a third of that term – would not be consistent with the principles of § 3553.  *See United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021) (upholding finding that district court properly denied release application where defendant "served less than 30% of his sentence, [such that] release would not 'reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense.'").

## CONCLUSION

Based on the foregoing, defendant's application for a compassionate release under § 3582 is DENIED.  The Clerk is directed to close the file.

SO ORDERED.

Dated:  Central Islip, NY

June 29, 2021

                                          /s/ Gary R. Brown
                                          Hon. Gary R. Brown
                                          United States District Judge